AMERICAN TRADING COMPANY *v.* INGRAM-DAY LUMBER COMPANY.

[69 South. 707.]

1. SHIPPING. *Demurrage. Liability. Delay in loading. Contract. Construction of charter party. Waiver by acceptance of cargo. Trial. Peremptory instructions. Consideration of evidence.*

In a suit to recover demurrage paid to the master of a vessel for delay in the loading of lumber, which delay was alleged to have been caused by the wrongful acts of defendant's inspector, in refusing to accept certain lots of lumber tendered for inspection, where it did not appear that such acts delayed the loading, or that they were willful and reckless, plaintiff was not entitled to judgment.

2. Shipping. *Demurrage. Contract. Construction of charter party.*

Where in an action to recover demurrage paid to the master of a vessel for delay in loading lumber, it was shown that plaintiff entered into a written contract with defendant by the terms of which plaintiff was to sell and deliver to defendant a cargo of lumber "f. o. b., pier Gulfport, for November loading" and defendant requested that loading be delayed until December to which plaintiff replied, that it would be inconvenient, and that it could not agree to load in December, but afterwards received a copy of the charter party, and arranged a berth for the vessel with full knowledge of its provisions, plaintiff thereby acquiesced in the change of date and was bound by the charter party, so that it was not entitled to recover demurrage paid on account of delay in loading caused by the change.

3. Shipping. *Demurrage. Delay in loading. Waiver by acceptance of cargo.*

A right of action for damages for breach of contract arises on the failure of the seller to deliver the goods as agreed on for a delay in delivery. In the case of a partial delivery an action for damages will lie for the part not delivered, the acceptance of the partial deliveries being no waiver of the breach.

4. Trial. *Peremptory instructions. Consideration of evidence.*

The evidence of the plaintiff must be, upon its application for a peremptory instruction, taken most strongly against it.

Appeal from the circuit court of Harrison county.
Hon. T. H. Barrett, Judge.

Suit by Ingram-Day Lumber Company, against the American Trading Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Ford & White,* for appellant.

*Mize & Mize,* for appellee.

Stevens, J., delivered the opinion of the court.

This action involves the question of liability between the parties hereto for one thousand four hundred and eighty-eight dollars demurrage paid by appellee to the

master of a vessel in the harbor of Gulfport.  The In-
gram-Day Lumber Company, appellee, a corporation
engaged in the manufacture of lumber in Harrison coun-
ty, Miss., entered into a written contract with the Amer-
ican Trading Company, a corporation engaged in the ex-
port trade, by the terms of which appellee was to sell and
deliver to appellant a cargo of lumber "f. o. b. pier,
Gulfport, for November loading."  This contract is of
date July 28, 1911.  About September 13, 1911, the Amer-
ican Trading Company wired Ingram-Day Lumber Com-
pany stating its inability to charter a vessel for Novem-
ber loading, and asked that appellee extend the time of
delivery until December 1st.  The Ingram-Day Lumber
Company replied by letter that it would be hampered
by delivery of other orders in December and "preferred
November loading;" that "we have all these arrange-
ments made, and should you change the date of loading
it would interfere with other loading; therefore we do
not feel that we are safe in making this promise."

On September 29th thereafter the American Trading
Company forwarded to appellee a copy of the charter
party entered into between them and the steamship com-
pany owning the vessel Aphrodite, and advising that
the ship would report for cargo by December 1st, and that
the vessel would likely take advantage of its option of
loading one thousand barrels of rosin, thereby slightly
reducing the cargo of lumber.  The Ingram-Day Lumber
Company on October acknowledged receipt of the charter
party and made no objection to the arrangement between
appellant and the ship company, and offered no sugges-
tion as to changing the time of delivery.

Prior to the arrival of the vessel, and on December
11th, the Ingram-Day Lumber Company made written
application to the Gulf & Ship Island Railroad Company,
owner of the wharf, for berthing the vessel and advising
that the vessel would arrive about December 19th.  The
vessel did arrive in port December 19th, ready for load-

ing on the 20th. By custom of the harbor, and on account of inadequate wharfage facilities, ships took their turn at the pier in the order of their arrival. There was no vacant berth for the Aphrodite when it arrived. On account of this crowded condition of docks she was unable to come alongside of the wharf in accordance with the rules of the railway company until December 29th. At this time it so happened that the Ingram-Day Lumber Company was loading another vessel called the Bright Wings. Under rules of the port the Bright Wings was not taking on her cargo as rapidly as she should, and was ordered out of her berth to make room for the vessel having the next claim to the berth. The agent of the Ingram-Day Lumber Company thereupon went to the wharfmaster who controls the vessels and represented to said wharfmaster that his company controlled the berthing of both the Bright Wings and the Aphrodite and directed the wharfmaster to change positions of the two ships and permit the Bright Wings to remain at the wharf, thereby delaying the berthing of the Aphrodite until January 16, 1912. When the Aphrodite did obtain a berth, the cargo contracted for had not been delivered alongside of the ship or on the pier. It appears that the Ingram-Day Lumber Company did not, in fact, have this lumber on hand at its manufacturing plant, but was busy at that time buying the lumber from various mills, and thereby accumulating it from different sources, over land and sea. This lumber continued to be delivered in installments until after the expiration of the lay days of the ship and after demurrage began to accrue. It appears, further, that under the charter party the number of lay days was twenty-nine and from the evidence that the vessel, by loading at its maximum intake per day, could have finished loading in ten days. After the ship loaded, the Ingram-Day Lumber Company, in order to obtain a so-called certificate of inspection for the cargo and obtain clearance for the vessel, was compel-

led to pay eight days' demurrage to the master of the vessel. After getting a certificate of inspection, appellee then made sight draft upon appellant for the purchase price of the entire cargo, and thereafter demanded from appellant reimburstment of the demurrage, and upon denial of liability brought this action in the circuit court for the recovery thereof.

The facts above stated were pleaded in detail by appellant in its notice under the general issue. At the conclusion of the testimony on the trial of the case in the circuit court both parties asked for peremptory instruction. The court granted to plaintiff, appellee here, a peremptory instruction, in pursuance of which judgment was rendered for the full amount sued for.

There was considerable testimony on behalf of plaintiff to the effect that delay in the shipment of several installments of lumber was occasioned by the wrongful acts of certain inspectors of the American Trading Company in refusing to accept certain lots of lumber tendered for inspection at the mills. There is evidence to the effect that certain inspectors of the purchaser refused to accept these lots of lumber, and that thereafter other inspectors of the company reinspected the lumber offered and accepted it. There is no evidence that the refusal of the first inspectors was characterized by willfulness or recklessness, but for some reason not disclosed by the record the inspectors differed as to the grade of the lumber or on the question whether these particular lots of lumber would bear South American inspection, and this fact according to witnesses for appellee, delayed shipment on some of the lumber from the mills to Gulfport, the place of loading. The witnesses estimated this delay from six to eight days. The evidence does not show, however, that this delay in shipment checked or suspended the actual loading of the vessel. In other words, it is uncertain from the testimony whether during the particular time of this delay the vessel had ac-

cess to a sufficient quantity of lumber to keep her busy loading. The log kept by the witness Sommerville shows that, excepting Sundays and one legal holiday, the stevedore company's gangs were busy loading each of the fourteen days actually consumed in loading on and after the day the vessel actually berthed.

It is the contention of counsel for appellee that the Ingram-Day Lumber Company was not bound by the terms of the charter party, and therefore was not obligated to deliver this lumber within the lay days of the vessel. While the Ingram-Day Lumber Company was not a party to this contract between the charterer and the owners of the vessel, it manifestly appears that the company waived its right to deliver the cargo for November loading as originally stipulated for in the contract for the purchase of the lumber, and thereafter acquiesced in the plan of appellant to charter and present for loading this very vessel Aphrodite, and undertook to deliver the entire cargo according to the requirements of the ship. A copy of the charter party was furnished appellee, and certainly placed appellee upon notice of the intended arrival of the ship and the time within which the ship expected to load. Mr. Mitchell, secretary and general manager of appellee company, testified that he examined to some extent the charter party, saying:

"I looked at it to ascertain the demurrage; this is in one clause. I familiarized myself with those features."

Upon being asked why he familiarized himself with those features, he responded:

"Because my customer was interested in those features, and I knew it was a matter of dollars and cents to him if not complied with."

The original contract for the purchase of the lumber does not expressly provide for a delivery by installments. When appellee, therefore, undertook to deliver the lumber for this particular vessel, and long after the time stipulated for delivery in the written order it thereby obli-

gated itself as the seller to deliver the entire cargo in ample time for the vessel to begin loading at its maximum intake per day as soon as it was berthed; in other words, the notice by appellant that it had chartered a vessel to take on this particular order or cargo after the time stipulated in the original contract, together with the undertaking on the part of appellee to furnish the entire cargo for the vessel in question, operated simply to change the time of delivery from "November loading" to that time fixed by the requirements of the steamship company in its charter party. The effect of a contrary holding would be to substitute no time or an indefinite length of time for the delivery of the lumber in question, and therefore, in effect, to nullify the contract altogether. It is manifest that appellee acquiesced in the arrangement for the vessel. Appellee as early as December 11th made written application itself for berthing this particular vessel. This action was followed by its wrongful action in changing the time of berthing between the two vessels, Bright Wings and Aphrodite, and by its efforts to accumulate the cargo in question, even after the vessel came into the harbor.

It is further contended by counsel for appellee, and seems to have been the holding of the court below, that the acceptance of certain installments of this lumber after the vessel went on demurrage constitutes a waiver on the part of the time for delivery and all damages incident to delay. We do not so hold.

"A right of action for damages for breach of contract arises on the failure of the seller to deliver the goods as agreed or for a delay in delivery. In the case of a partial delivery an action for damages will lie for the part not delivered, the acceptance of the partial deliveries being no waiver of the breach." Cyc. vol. 35, p. 615.

A waiver is to be determined by the circumstances of each particular case. In this instance a refusal to accept the last installments might have resulted in the ship

being supplied with less than its cargo stipulated for in the charter party, and probably would have necessitated payment of much greater damages by appellant to the owners of the vessel. Counsel for appellee concede that this vessel could have been loaded without demurrage if, as they say, the inspectors had not rejected the lumber they should have accepted, and thereby caused a delay in the loading of the vessel of at least ten days. It necessarily follows, therefore, that if the delay in inspection was not the fault of appellant, or did not, in fact, delay the actual work of loading, the demurrage was occasioned by the negligence or delay in shipment by appellee. This demurrage has already been paid by appellee, and, if occasioned by its own negligence, it follows that there is no cause of action for the recovery of or claim for reimburstment for this demurrage. But, conceding that appellee, at the time the first inspectors of appellant declined to accept certain lots of lumber tendered, was in default or had breached its contract, it yet remains that appellant was under the duty of co-operating with appellee in preventing the ship going on demurrage or or keeping the actual demurrage, if any, at a minimum. The fact that appellant, through its inspectors, accepted certain lumber which its inspectors had previously de-declined to accept, places this company to that extent in fault, and if this prevented the ship from taking on her cargo at her maximum intake per day, then appellant would be cast in the attitude of causing, by the negligence of its inspectors, at least a part of the very demurrage for which, under the provisions of the charter party, it was liable. It will be remembered that this is not a contest over the dispatch money provided for by the charter party. It is to be remembered further that the written order calls for "November loading" and for "one steamer cargo pitch pine, 2,000/2,250 M. ft. (ten per cent. more or less to suit capacity of vessel) long leaf sound and square edge, dry and bright, assorted as follows," etc.

The letter of appellant in forwarding the charter party refers to this particular order, saying:

"Aphrodite R. P. 6785. We inclose charter party covering this steamer, which we estimate will report about the 1st part of December for cargo," etc.

In response appellee writes:

"We have your favor of the 29th inclosing charter party for your order No. 6785 steamship Aphrodite."

The actions of the parties thereafter show that appellee understood the cargo was to be loaded. While the stevedore company had the contract to do the loading and was paid by appellant, it yet remains that appellee contracted to deliver a "steamer cargo" in time to be loaded in November. This is followed by the action of appellee in making application for the berthing of the vessel and in undertaking to control the berthing. When the cargo is finally aboard, the bill of lading and inspection certificate designate appellee as the shipper of the cargo "for account of American Trading Company," and on the faith and verity of these documents appellee drew sight draft for the purchase price. The original contract, therefore, must be interpeted in connection with the corespondence of the parties and the construction which they by their conduct have placed upon it. It appears to us that the real undertaking of appellee was to furnish this particular vessel with a sufficient cargo of lumber according to the specification and assortment provided for in the written order; in fact, it was the shipper of the cargo for the account of appellant. The evidence shows that appellee had the right to control the bill of lading until it received its money.

The evidence of the plaintiff must be, upon its application for a peremptory instruction, taken most strongly against it; and, according to the estimate of plaintiff's witnesses, the delay complained of on account of inspection would not consume the entire eight days' demurrage. Furthermore, even though appellant did not at-

tempt to excuse the action of its inspectors in first declining certain of the lumber tendered, the question whether the delay in inspection actually suspended the work of loading, or whether it caused the ship to take on a minimum instead of a maximum intake per day, are questions, upon the whole record, involved in great doubt and uncertainty. The principle of law really invoked by both parties to this appeal is well stated by Mr. Elliott in his work on Contracts (volume 3, § 2151):

"The principle is firmly settled that the party injured by the breach of a contract can recover only such damages as by reasonable exertion and expense he could not prevent. . . . The law, for wise reasons, imposes upon a party subjected to injury from a breach of contract the active duty of making a reasonable exertion to render the injury as light as possible. Public interest and sound morality accord with the law in demanding · this; and if the injured party, through negligence or willfulness, allows the damages to be unnecessarily enhanced, the increased loss justly falls upon him."

It was error, therefore, to grant appellee a peremptory instruction.

We think the judgment of the lower court should be reversed, and the cause remanded.

*Reversed & remanded.*